IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WELLS FARGO BANK, N.A., ) | CIVIL NO. 12-00585 JMS-KSC |
| ) | |
| Plaintiff, ) | ORDER GRANTING |
| ) | PLAINTIFF/COUNTERCLAIM |
| vs. ) | DEFENDANT WELLS FARGO BANK, |
| ) | N.A.'S MOTION TO DISMISS |
| KIMBERLY L. BURGER; THE ) | COUNTERCLAIM |
| ASSOCIATION OF APARTMENT ) | |
| OWNERS OF PACIFIC SHORES; ) | |
| AND DOES 1-20, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| KIMBERLY L. BURGER, ) | |
| ) | |
| Counterclaim Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Counterclaim Defendant. ) | |
| _____ ) | |

**ORDER GRANTING PLAINTIFF/COUNTERCLAIM DEFENDANT
WELLS FARGO BANK, N.A.'S MOTION TO DISMISS COUNTERCLAIM**

## I.  INTRODUCTION

On June 27, 2012, Wells Fargo Bank, N.A. ("Wells Fargo") filed a

Complaint to Foreclose in the Second Circuit Court of the State of Hawaii alleging

that Kimberly L. Burger ("Burger") is in default on her mortgage on real property

located at 2219 South Kihei Road #B202, Kihei, Hawaii 96753 (the "subject property"). Burger removed Wells Fargo's Complaint to this court and filed a Counterclaim asserting that Wells Fargo engaged in an unfair or deceptive act or practice ("UDAP") in violation of Hawaii Revised Statutes ("HRS") § 480-2 when it failed to comply with HRS § 667-17, which requires any attorney seeking to foreclose on a residential property to submit an affirmation that verifies the accuracy of the documents submitted.

Currently before the court is Wells Fargo's Motion to Dismiss, which argues that Burger cannot base a UDAP claim on a violation of HRS § 667-17. Based on the following, the court agrees and GRANTS Wells Fargo's Motion to Dismiss.

## II.  BACKGROUND

On June 27, 2012, Wells Fargo filed a Complaint to Foreclose on the subject property in the Second Circuit Court in the State of Hawaii. Doc. No. 1-1, Burger Ex. A. The Complaint alleges that on September 21, 2006, Wells Fargo and Burger entered into a mortgage agreement where Burger executed and delivered an Adjustable Rate Note to Wells Fargo, which was secured by a mortgage on the subject property. *Id.* ¶¶ 2, 7. On March 9, 2012, Burger allegedly defaulted on the mortgage and Wells Fargo sought to foreclose. *Id.* ¶ 11. The

Complaint seeks to foreclose the mortgage on the subject property and obtain other just relief, including attorneys' fees, costs, and expenses.  *Id.* at 5.

On October 30, 2012, Burger removed the action to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Doc. No. 1, Burger's Notice of Removal.

On November 2, 2012, Burger filed a Counterclaim against Wells Fargo alleging that Wells Fargo committed a UDAP by failing to comply with HRS § 667-17.  Doc. No. 4.  Specifically, Burger asserts that HRS § 667-17 requires an attorney to submit an affirmation verifying the accuracy of the documents submitted in a judicial foreclosure.  *Id.* ¶ 11.  Burger alleges that Wells Fargo's practice of filing a Complaint to Foreclose without an attorney affirmation is likely to mislead reasonable consumers "into believing that [Wells Fargo] has performed an initial review of the mortgage, note, chain of assignments, schedule of payments, etc." *Id.* ¶ 18.  As a result of allegedly being misled by Wells Fargo's actions, Burger asserts that she suffered "financial damages, including but not limited to attorneys fees and costs in defending this action, in an amount to be determined at trial." *Id.* at 4.

On January 15, 2013, Wells Fargo filed a Motion to Dismiss Burger's Counterclaim.  Doc. No. 27-1.  Burger filed an Opposition on July 9, 2013, Doc.

No. 46; and Wells Fargo filed a Reply on July 29, 2013.  Doc. No. 47.  A hearing

was held on August 26, 2013.  At the August 26, 2013 hearing, the court directed

the parties to submit supplemental briefing addressing whether a violation of HRS

§ 667-17 is in "trade or commerce" as required by HRS § 480-2.  *See* Doc. No. 49.

Burger submitted her supplemental opposition on September 16, 2013, Doc. No.

54, and Wells Fargo submitted its supplemental reply on September 19, 2013.

Doc. No. 55.

### III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"  A Rule

12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal

theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v.

Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*,

521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as

true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

///

///

# IV.  ANALYSIS

Burger bases her UDAP claim on an alleged violation of HRS § 667-17, which provides in relevant part:  "[a]ny attorney who files on behalf of a mortgagee seeking to foreclose on a residential property under this part shall sign and submit an affirmation that the attorney has verified the accuracy of the documents submitted, under penalty of perjury and subject to applicable rules of professional conduct."  For several reasons, this claim fails.

First, a threshold requirement for a UDAP claim is that the conduct at issue be in "trade or commerce."  Specifically, HRS § 480-2 provides, in relevant part: "[u]nfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are unlawful."  HRS § 480-2(a) (emphasis added).  In *Cieri v. Leticia Query Realty, Inc.*, the Hawaii Supreme Court addressed the meaning of "trade or commerce" as used in HRS § 480-2, and found persuasive a line of cases interpreting the phrase "trade or commerce" to mean acts or practices perpetrated in a "business context."  80 Haw. 54, 60-66, 905 P.2d 29, 35-41 (1995).  In adopting this interpretation of HRS § 480-2's "trade or commerce" language, *Cieri* held:

> [W]e similarly interpret HRS § 480-2 to require that, in order to fall within the purview of HRS chapter 480, a claim for alleged unfair and deceptive acts or practices against [a defendant] must stem from a transaction

6

involving "conduct in any trade or commerce," similar to
the Massachusetts courts' definition of the concept of
"business context."  The question whether a transaction
occurs within a "business context," thus implicating the
applicability of HRS chapter 480 to an individual
[defendant], must be determined on a case-by-case basis
by an analysis of the transaction.

*Id.* at 65, 905 P.2d at 40.  *Cieri* reasoned that if claims were not required to meet

the "threshold issue" of establishing conduct in trade or commerce, it would detract

from "HRS chapter 480's focus on trade, commerce, and business."  *Id.* at 63, 905

P.2d at 38.

Applying this reasoning, courts have determined that steps taken in

pursuit of litigation are not in the business context.  *See Dalesandro v. Longs Drug*

*Stores Cal., Inc.* 383 F. Supp. 2d 1244, 1250-51 (D. Haw. 2005) ("The activity the

parties were engaged in -- negotiating the production of documents for settlement

purposes prior to the inception of litigation -- occurred in preparation for litigation,

not in trade or commerce."); *State, Office of Atty. Gen. v. Shapiro & Fishman, LLP*,

59 So.3d 353, 356 (Fla. Dist. Ct. App. 2011) (concluding that Attorney General's

subpoena is more akin to conduct in the processing of legal claims, as opposed to

traditional notions of trade or commerce); *Pursell v. First Am. Nat'l Bank*, 937

S.W.2d 838, 842 (Tenn. 1996) (holding that a bank's and company's actions with

regard to repossession of collateral securing loan did not affect conduct of trade or

7

commerce within meaning of Tennessee Consumer Protection Act); *Begelfer v. Najarian*, 409 N.E.2d 167 (Mass. 1980) (finding that "defendants' pursuit of their contractual and legal remedies" was not engaging in "trade or commerce," and the demand for payment under a note did not constitute an "unfair or deceptive act"). The court finds these cases persuasive and determines that Wells Fargo's alleged conduct does not fall within the scope of HRS § 480-2.

In opposition, Burger argues that Wells Fargo's actions constitute engaging in "trade or commerce" because seeking foreclosures is part of its business. Doc. No. 54, Suppl. Opp'n at 1. Although Wells Fargo may certainly be forced to seek foreclosures in the course of its business as mortgage lender and mortgage loan servicer, as explained above, engaging in litigation is not "trade or commerce" as contemplated by HRS § 480-2. Rather, Wells Fargo is in the business of mortgage lending, and this judicial foreclosure falls outside of this lending activity.

Burger also relies on *In re Kekauoha-Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012), which affirmed the bankruptcy court's determination that a failure to properly announce the postponement of a nonjudicial foreclosure was a deceptive act in violation of HRS § 480-2. *In re Kekauoha-Alisa* is distinguishable -- it did not involve a judicial foreclosure as is at issue in this action, much less compliance

8

with HRS § 667-17.  Further, beyond the differences between non-judicial versus

judicial foreclosures, a failure to comply with postponement requirements is one of

the chapter 667 violations that the Hawaii Legislature has recognized as an unfair

or deceptive act or practice under HRS § 480-2.  Specifically, HRS § 667-60 sets

forth a list of thirteen chapter 667 violations that constitute an unfair or deceptive

act or practice under § 480-2, and compliance with postponement requirements of

HRS § 667-28 is one of them.  *See* HRS § 667-60(2).  That a violation of § 667-17

is *not* included in this list of per se violations provides further support that the

Hawaii Legislature did not view the attorney affirmation as being in trade or

commerce.  *See Korean Buddhist Dae Won Sa Temple of Haw. v. Sullivan*, 87

Haw. 217, 233, 953 P.2d 1315, 1331 (1998) (applying statutory canon of

"*expressio unius est exclusio alterius*, meaning that the mention of one thing

implies the exclusion of another," to determine that roof was in violation of

applicable zoning laws); *see also* 2A Norman J. Singer & J.D. Shambie Singer,

Sutherland Statutes & Statutory Construction § 47:23 (7th ed. 2012) ("It has also

been assumed when the legislature expresses things through a list, the court

assumes that what is not listed is excluded.").  The court therefore finds that an

alleged violation of HRS § 667-17 is distinctly outside the "business context" -- the

decision not to have an attorney verify the submitted documents occurs in

9

conjunction with the filing of a judicial foreclosure action, not in the "business context" or "trade or commerce."

Second, the court finds that Burger cannot establish that Wells Fargo engaged in a practice likely to mislead consumers. *See Tokuhisa v. Cutter Mgmt. Co.*, 122 Haw. 181, 194-95, 223 P.3d 246, 259-60 (2009) (holding that a claimant must show (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material). Wells Fargo filed this action to foreclose on June 28, 2012, one day before § 667-17 became effective. *See* Doc. No. 1-1, Burger Ex. A. As a result, Wells Fargo had no duty to file an affirmation at the time of filing this action, and Burger similarly had no basis, as a consumer, to expect that Wells Fargo would submit an affirmation when no law mandated such a requirement. And although § 667-17 applies retroactively such that Wells Fargo will need to comply with § 667-17 before obtaining relief, Wells Fargo's actions can hardly be seen as deceptive when (1) the complaint was filed the day before § 667-17 became effective; (2) HRS § 667-17 is silent as to when Wells Fargo must file an affirmation; and (3) in any event, the court would not grant foreclosure relief before Wells Fargo submits an attorney affirmation as now required by law. *See* 2012 Haw. Sess. Laws, Act 182, § 67.

For the foregoing reasons, Burger cannot assert a UDAP claim based on HRS § 667-17.  The court GRANTS Wells Fargo's Motion to Dismiss.

When dismissing the complaints of *pro se* litigants, the court abides by the principle that *pro se* litigants are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action," "[u]nless it is absolutely clear that no amendment can cure the [complaint's] defect[s]."[1]  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

Here, any amendment to Burger's Counterclaim would be futile.  No amount of "artful pleading" can cure the fatal, glaring flaw in Burger's argument -- an alleged violation of HRS § 667-17 does not give rise to a UDAP claim under HRS § 480-2.  This dismissal is without leave to amend.

///

///

///

///

///

---

[1]  Although the Counterclaim was filed by an attorney, Burger has since elected to proceed *pro se*.

11

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS Wells Fargo's Motion

to Dismiss without leave for Burger to amend.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 23, 2013.



    /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Kimberly L. Burger v. Wells Fargo Bank, N.A.*,  Civ. No. 12-00585 JMS-KSC, Order Granting Plaintiff/Counterclaim Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Counterclaim.